UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



**FILED**
SEP 2 6 2007
CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| LARSON MANUFACTURING COMPANY OF SOUTH DAKOTA, INC., | \* | CIV 03-4244 |
| Plaintiff, | \* | |
| -vs- | \* | MEMORANDUM OPINION AND ORDER |
| ALUMINART PRODUCTS LIMITED, a Canadian company; and CHAMBERDOOR INDUSTRIES, INC., a Delaware Corporation, | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

A trial to the Court was held on July 17 and 18, 2007, involving Count III of Defendants' counterclaims and their Fourth, Fifth and Sixth Affirmative Defenses in the Third Amended Answer and Counterclaims, Doc. 177, and on Count IV to the extent it involves allegations of inequitable conduct before the United States Patent and Trademark Office ("Patent Office"). Several exhibits were introduced during the trial and both parties designated portions of depositions, which the Court read after the trial. The parties submitted post-trial briefs and proposed findings of fact and conclusions of law. For the reasons set forth below, the Court finds the Plaintiff Larson Manufacturing Company of South Dakota, Inc. ("Larson") engaged in inequitable conduct during the Reexamination of United States Patent No. 6,616,998 ("the '998 patent") and the Court rules that the '998 patent is unenforceable based upon that conduct.

## I. BACKGROUND

Defendants AluminArt Products Limited and Chamberdoor Industries, Inc. (collectively referred to herein as "AluminArt") assert that Larson and its patent lawyers, Patterson, Thunte, Skaar, and Christensen ("the Patterson firm") engaged in inequitable conduct during the

Reexamination of the '998 patent and that the '998 patent is unenforceable based upon that conduct. AluminArt also makes a claim that Larson engaged in inequitable conduct in the initial prosecution of the '998 patent. The Court earlier issued a Memorandum Opinion and Order setting forth the Court's findings regarding the parties' requests for claim construction in this action. (Doc. 128, March 20, 2007.)

For purposes of the Court trial in this action, the Court took judicial notice of several sections of the Code of Federal Regulations and the Manual of Patent Examining Procedure, including the glossary of terms published by the Patent Office. A "reexamination proceeding" is explained in the glossary:

> [A]t any time during the enforceability of a patent any person may file a request for the [Patent Office] to conduct a second examination of any claim of the patent on the basis of prior art patents or printed publications which that person states to be pertinent and applicable to the patent and believes to have a bearing on the patentability (*see* 37 CFR 1.501). In order for the request for reexamination to be granted, a substantial new question of patentability must be present with regard to at least one patent claim. The request must be in writing ....

(Ex. 255.) The Patent Office granted AluminArt's request for reexamination of the '998 patent on December 20, 2004.

## II. FINDINGS OF FACT

On August 7, 2001, Larson filed United States Provisional Patent Application[1] No. 60/310,557 ("the '557 Provisional"), describing a door including a retractable screen. Thereafter, Larson has pursued several patents for storm doors including a retractable screen, but the '998 patent is the only such patent issued to Larson. Larson filed U.S. Patent Application No. 10/212,465 ("the

---

[1] A "provisional patent application" is defined as "a U.S. national application for patent filed in the [Patent Office] under 35 U.S.C. § 111(b). It allows filing without a formal patent claim, oath or declaration, or any information disclosure (prior art) statement. It provides the means to establish an early effective filing date in a nonprovisional patent application filed under 35 U.S.C. § 111(a) and automatically becomes abandoned after one year. It also allows the term "Patent Pending" to be applied." (Ex. 255.)

'465 Application") on August 5, 2002, which was the utility patent[2] application that became the '998 patent. The '998 patent issued September 16, 2003. Larson filed this action against AluminArt shortly thereafter on October 24, 2003.

The first storm door Larson sold with the retractable screen that is the subject of the '998 patent was in March 2002. Larson first learned of AluminArt's View and Vent door in July 2002 from an AluminArt brochure obtained by a Larson sales representative. Larson believes the View and Vent door infringes the '998 patent. AluminArt first offered its View and Vent door as a special order in the spring of 2002. AluminArt was selling its View and Vent storm dorm with a retractable screen to customers such as Menards. Larson ordered an AluminArt door on July 11, 2002. Thus, after the '557 Provisional was filed, but before the '465 Application was filed on August 5, 2002, Larson learned of AluminArt's View and Vent door. The AluminArt door was received by Larson in Brookings in late August 2002 and it was then sent to Larson's attorneys in Chicago. Larson did not cite AluminArt's View and Vent door as prior art in any of its applications to the Patent Office.

On October 24, 2002, Larson filed a petition with the Patent Office to expedite the prosecution of the '998 patent application, claiming there was an infringing device on the market. The '998 patent was issued on September 16, 2003.

---

[2]A "utility patent" "may be granted to anyone who invents or discovers any new, useful, and nonobvious process, machine, article of manufacture, or composition of matter, or any new and useful improvement thereof." (Ex. 255.)

3

Larson filed a Continuation Application[3] (Serial No. 10/606,039, "the '039 Continuation") before the '998 patent issued to pursue broader patent claims while it sued AluminArt for infringement of the '998 patent. Examiner Blair Johnson was assigned to the '039 Continuation. The '039 Continuation proceeding will be addressed further following a discussion of the reexamination proceedings of the '998 patent.

## A.    Reexamination Proceedings

AluminArt filed a written request for reexamination of claims 1-22 of the '998 patent on September 28, 2004, based in part on U.S. Patent No. 3,244,222 to Johnson ("the Johnson '222 patent"). This action was stayed on October 4, 2004, pending the outcome of the reexamination proceedings. The request was granted by the Patent Office on December 20, 2004, for an Ex Parte Reexamination, which would be conducted by three patent Examiners ("the Reexam Panel"). Examiner Jimmy Foster was designated the Primary Examiner for the Reexam Panel. The two lawyers at the Patterson firm that represented Larson during the Reexamination were Jim Patterson and Matt Macari. Mr. Macari also appeared as counsel for Larson in this action and continues to be listed as an attorney of record for Larson.

Mr. Patterson submitted an Information Disclosure Statement to the Reexam Panel on February 25, 2005, citing 201 United States patents and nine foreign patents that Larson requested be considered by the Reexam Panel. (Ex. 217G.) Several pleadings filed in this action were disclosed to the Reexam Panel and a general reference to AluminArt's allegations of inequitable conduct was included in the Information Disclosure Statement. The Reexam Panel was also advised that this Court stayed the litigation pending the outcome of the reexamination proceedings. A

---

[3]A "continuation" is defined as "a second application for the same invention claimed in a prior nonprovisional application and filed before the first application becomes abandoned or patented." (Ex. 255.) A "nonprovisional patent application" is defined as "an application for patent filed under 35 U.S.C. § 111(a) that includes all patent applications (i.e., utility, design, plant and reissue) except provisional applications. The nonprovisional application establishes the filing date and initiates the examination process. A nonprovisional utility patent application must include a specification, including a claim or claims; drawings, when necessary; an oath or declaration; and the prescribed filing fee." (Ex. 255.)

4

Supplemental Information Disclosure Statement was submitted by Mr. Patterson to the Reexam Panel on June 10, 2005, wherein Larson requested an additional three United States patents be considered by the Reexam Panel. (Ex. 217H.)

On September 13, 2005, the Patent Office issued an Office Action rejecting claims 1 through 22 as unpatentable over the Johnson '222 patent. The Reexam Panel found that several of the claims were anticipated by the Johnson '222 patent, *see* 35 U.S.C. § 102(b), and also rejected some of the claims as being obvious, *see* 35 U.S.C. § 103(a).

In response to the September 13, 2005 Office Action, Mr. Patterson appeared at a Reexam Panel interview on October 14, 2005, and submitted a written Amendment on October 18, 2005, seeking to convince the Reexam Panel that the '998 patent was not anticipated by the Johnson '222 patent and was not obvious. The Ex Parte Reexamination Interview Summary states that the Johnson '222 patent was discussed at the October 14, 2005 interview and also states: "Patent Owner successfully argued that Johnson does not disclose an elongated feed assembly which slides in the fabric tracks between facing weather stripping. The rejection of claim 14 over Johnson should therefore apparently be withdrawn. Similar language in claims 11 and 21, upon strengthening of the claim limitation, would also apparently not be anticipated by Johnson." (Ex. 217E.)

Throughout the written Amendment dated October 18, 2005, Mr. Patterson argued that the '998 patent was not anticipated by the Johnson '222 patent because Johnson "fails to teach any portion of the edge frame 40 extending into or sliding between the strips 112, 114." (Ex. 217F, p. 9.) Thus, the distinguishing feature repeatedly emphasized by Mr. Patterson was that the '998 patent required an "elongated insert attachment member" that has "'spaced apart ends which extend into and slide between the weather stripping in each fabric track.'" (*Id.* at p. 11.)

On January 26, 2006, the Reexam Panel issued a "Notice of Intent to Issue *Ex Parte* Reexamination Certificate," canceling claims 1-10 and allowing claims 11-22. In the stated reasons for patentability of the '998 patent claims, the Reexam Panel found the prior art:

...teaches engaging an elongated insert attachment member, which is carried by the end of a retractable sheet material (such as a screen), to an insert (such as a glass insert), such as disclosed for example with respect to Figure 3 of [the Johnson '222 Patent]. Additionally, the prior art teaches providing an insert attachment member that will be slidably received in fabric tracks along with the fabric, such as disclosed for example with respect to Figure 4 of Kemp (U.S. Pat. No. 2,107,755). The prior art also teaches providing weather stripping, having different weather stripping elements, in a fabric track, between which the edge of a fabric extends ....

(Ex. 217J.) The Reexam Panel found, however, that, "the prior art fails to teach or fairly disclose spaced apart ends of an insert attachment member, extending into and sliding between weather stripping in each one of two fabric tracks, wherein the weather stripping includes different weather stripping elements, as part of a combination set forth in amended claim 11, and such would not have been obvious from any appropriate combination of the prior art of record." (Ex. 217J.) The Reexam Panel further specified as a point of patentability of claims 14 and 21 that the prior art did not teach or fairly suggest, and it would not be obvious, to provide a combination including as a feature:

... a sliding relationship of ends of the elongated feed assembly between facing portions of weather stripping of [sic] in each of two fabric tracks, as part of a door such as claimed. (claim 14)

...

... the elongated engagement member extending into screen tracks and between weather stripping ... (claim 21)

(Ex. 217J.) The Patent Office published an Ex Parte Reexamination Certificate for the '998 patent on September 19, 2006.

## B.   The '039 Continuation Prosecution

During prosecution of the '039 Continuation, Larson was represented by Mr. Patterson. As mentioned above, Mr. Patterson also represented Larson in the reexamination proceedings. On September 9, 2004, Examiner Johnson issued an Office Action rejecting the then-pending claims 40-62 as unpatentable under 35 U.S.C. § 102(b) as anticipated by, and/or under 35 U.S.C. § 103(a) as obvious, in view of the Johnson '222 patent. Larson then cancelled claims 40-62 and added claims 96-106. Claims 96-106 were then rejected as unpatentable by Examiner Johnson on September 21, 2005 as anticipated by the Johnson '222 patent or as rendered obvious based on the Johnson '222

Patent in combination with other patents, including U.S. Patent No. 6,640,869 to Ralph ("the Ralph '869 patent") and the U.S. Patent No. 2,107,755 to Kemp ("the Kemp '755 patent"). (Ex. 218F.)

On March 24, 2006, in response to the September 21, 2005 Office Action rejecting claims 96-106, Larson cancelled claims 96-106 and added claims 107-117. In the March 24, 2006 communication to the Patent Office, Larson also submitted to Examiner Johnson the Reasons for Patentability/Confirmation issued on January 26, 2006 by the Reexam Panel, explaining that the disclosure of the Johnson '222 patent was "discussed in detail during the reexamination of the parent case...." (Ex. 218, at 039 FH 0144.)

On June 23, 2006, Examiner Johnson issued an Office Action rejecting claims 107-117 as unpatentable as rendered obvious based on the Johnson '222 patent, together with the Ralph '869 patent and the Kemp '755 patent. Examiner Johnson also rejected some of the claims on the grounds of nonstatutory obviousness-type double patenting because they were not patentably distinct from claims in the '998 patent. In response to Larson's arguments in support of claims 107-117, Examiner Johnson stated:

> [Larson's] remarks address the lack of teaching in [the Johnson '222 patent] of the screen end member extending into the screen tracks. While the Examiner agrees with this assessment of Johnson, other art, of which [the Kemp '755 patent] is used as an example (see also German 19639478), clearly teaches a track and screen end member that rides in the track. Such a teaching is clearly analogous to [the Johnson '222 patent] and it's combination therewith is justifiable.

(Ex. 218H at 039 FH 0102.) The German 19639478 patent cited by Examiner Johnson will be referred to in this opinion as "the DE '478 patent." On March 22, 2007, Examiner Johnson again rejected Larson's arguments regarding the patentability of claims 107-117. Examiner Johnson's September 9, 2004 Office Action was disclosed to the Reexam Panel but the September 21, 2005 and June 23, 2006 Office Actions were not disclosed to the Reexam Panel.

## C.     The '915 Continuation-In-Part Prosecution

On July 29, 2004, Larson filed U.S. Patent Application No. 10/901,915 ("the '915 Continuation-in-Part"), as a Continuation-in-Part of the '039 Continuation.     Mr. Patterson represented Larson in this prosecution at the same time he was also representing Larson in the '039 Continuation and the '998 patent reexamination proceedings.

Before the Ex Parte Reexamination Certificate for the '998 patent was published on September 19, 2006, Larson submitted to Examiner Johnson a Supplemental Information Disclosure Statement on August 28, 2006 in the '915 Continuation-in-Part prosecution, disclosing nine commercial technical documents depicting and describing a retractable screen system made by the Genius Screen Company ("the Genius literature"), and also disclosing the DE '478 patent. (Ex. 219 at 915 FH 0064 and 0071.) The Genius literature had come to the attention of Larson's attorneys on or about October 5, 2005. (Ex. 240.; Patterson Depo. at p. 108-09.) The Genius literature and the DE '478 patent were not, however, disclosed to the Reexam Panel before the Ex Parte Reexamination Certificate was published. On February 5, 2007, Examiner Johnson issued an Office Action rejecting Larson's claims in the '915 Continuation-in-Part prosecution.

## III. DISCUSSION

To hold a patent unenforceable on the grounds of inequitable conduct, "there must be clear and convincing evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the U.S. Patent and Trademark Office ...." *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007). Inequitable conduct is "equitable in nature, and the trial court has the obligation to resolve the underlying facts of materiality and intent." *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1110 (Fed. Cir. 2003). If a court concludes that the elements of materiality and intent have been established by clear and convincing evidence, the court "must then 'balance the equities to determine whether the patentee has committed inequitable conduct that warrants holding the patent unenforceable.'" *Cargill*, 476 F.3d at 1364 (quoting *Monsanto Co. v. Bayer Bioscience N.V.*, 363 F.3d 1235, 1239 (Fed. Cir. 2004)). "Under the balancing test, '[t]he more material the

8

omission or the misrepresentation, the lower the level of intent required to establish inequitable conduct, and vice versa.'" *Id.* (quoting *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997)).

AluminArt contends Larson failed to disclose material information on five different grounds: (1) failure to tell the United States Patent and Trademark Office ("Patent Office") about AluminArt's 2002 door on the market; (2) failure to disclose to the Reexam Panel the Genius Retractable Screen literature; (3) failure to disclose to the Reexam Panel Preferred Engineering Retractable Screen literature; (4) failure to disclose to the Reexam Panel the DE '478 patent; and (5) failure to disclose to the Reexam Panel the '039 Continuation Office Actions issued by Examiner Johnson on September 21, 2005 and June 23, 2006.

## IV. CONCLUSIONS OF LAW

### A. Materiality

A misstatement or omission is material if it meets the elements of materiality under Patent Office Rule 56, *see* 37 C.F.R. § 1.56(b) (2006), or if it meets the "reasonable examiner" standard in 37 C.F.R. § 1.56(a) (1991). *See Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1316 (Fed. Cir. 2006); *Cargill*, 476 F.3d at 1364 (explaining that "the standard for materiality set forth in the current version of ... Rule 56 ... did not supplant the earlier 'reasonable examiner' standard ...."). The present version of Rule 56 provides that:

[I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
(1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
(2) It refutes, or is inconsistent with, a position the applicant takes in:
(i) Opposing an argument of unpatentability relied on by the [Patent] Office, or
(ii) Asserting an argument of patentability.
A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

37 C.F.R. § 1.56(b) (2006). Pursuant to the earlier "reasonable examiner" standard, "information is material where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." 37 C.F.R. § 1.56(a) (1991).

"[M]ateriality is determined from the viewpoint of a reasonable patent examiner, and not the subjective beliefs of the patentee." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1238 (Fed. Cir. 2003) (internal citations omitted). "Whether the examiner would have ultimately allowed the patent to issue is irrelevant because '[u]nder the "reasonable examiner" standard, a misstatement or omission may be material even if disclosure of that misstatement or omission would not have rendered the invention unpatentable.'" *Cargill*, 476 F.3d at 1366 (quoting *Digital Control*, 437 F.3d at 1318).

### 1. AluminArt's 2002 Door on Market

Relying on 35 U.S.C. § 102(a), AluminArt contends that Larson should have submitted AluminArt's View and Vent storm door to the Patent Office as prior art. To qualify as prior art under § 102(a), the View and Vent storm door must have been made or used in the United States or disclosed in a printed publication before the date of Larson's invention. *See* 35 U.S.C. § 102(a) (providing that, "A person shall be entitled to a patent unless – (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign county, before the invention thereof by the applicant for patent ...."). The earliest AluminArt offered its View and Vent storm door to the public by including it in a printed publication was in the spring of 2002. Inventor Bruce Thomas testified, however, that in 2001 he developed the concept of the door that was eventually covered by the '998 patent, and that the first prototype of the door was made in July or August of 2001. Larson's door that was covered by the '998 patent was sold in the United States as early as March 2002. Thus, Larson invented the door that was eventually covered by the '998 patent before AluminArt's View and Vent door was known or used by others in the United States or described in a printed publication. Thus, the Court concludes AluminArt has not

10

established by clear and convincing evidence that AluminArt's door was prior art that should have been disclosed to the Patent Office by Larson.

### 2. Withheld Genius Retractable Screen Literature

The Genius literature came to the attention of Larson's attorneys on or about October 5, 2005. A short while later, on October 14, 2005, Mr. Patterson met with the Reexam Panel in an attempt to convince the examiners to reverse their decision rejecting claims 1-22 of the '998 patent, which rejection was based on the Reexam Panel's finding that these claims were either anticipated by the Johnson '222 patent or were obvious. Mr. Patterson also submitted a written Amendment to the Reexam Panel on October 18, 2005, presenting arguments in support of Larson's position that the rejected claims in the '998 patent were not anticipated by the prior art and were not obvious. He did not disclose the Genius literature to the Reexam Panel in either the meeting on October 14 or the written Amendment on October 18, 2005.

On August 28, 2006, Mr. Patterson disclosed the Genius literature to Examiner Johnson, who was assigned to the '915 Continuation-in-Part prosecution of the '039 Continuation. (Ex. 219A at 915 FH 0071.) At the time Mr. Patterson disclosed the Genius literature to Examiner Johnson, the Reexam Panel had not yet published the Ex Parte Reexamination Certificate for the '998 patent. Mr. Patterson did not disclose the Genius literature to the Reexam Panel and no explanation was offered at trial by Larson for citing it to Examiner Johnson but not to the Reexam Panel.

The Genius literature discloses a retractable screen assembly containing an elongated member extending into screen tracks and between weather stripping that was advertised for incorporation into a door or window, which are the combined features the Reexam Panel was looking for in the prior art. (Ex. 261, 263 and 264; Ex. 240 at LM 4209, Ex. 260.) Genius was marketing and selling to the public items that incorporated the features the Reexam Panel found missing in the prior art. The Court finds the Genius literature is material for the reasons set forth below.

Larson argues the Genius literature is cumulative to the patents cited to the Reexam Panel, the Johnson '222 patent, the Kemp'755 patent and U.S. Patent No. 6,082,432 to Kissinger ("the Kissinger patent"). Although Larson argues the Genius literature is cumulative, there was no evidence introduced by Larson to establish that the Genius literature was withheld from the Reexam Panel on the grounds that it was cumulative. The Court concludes the Genius literature is not cumulative to these three patents. After the initial rejection of claims 1-22 of the '998 patent, the Reexam Panel agreed with Larson that the Johnson '222 patent did not show an elongated feed assembly extended in the screen tracks between weather stripping. The Kemp '755 patent did disclose "an insert attachment member that will be slidably received in fabric tracks along with the fabric," (Ex. 256) but there was no weather stripping in that patent.

The Kissinger patent poses a closer question for the Court, but the Court concludes the Genius literature is not cumulative to the Kissinger patent. The Court finds it relevant that the Reexam Panel did not cite the Kissinger patent in its Reasons for Patentability/Confirmation. (Ex. 217J at R FH 0018.) The Kissinger patent was cited by Larson to the Reexam Panel as prior art, and thus was considered by the Reexam Panel. (*See* Ex. 217 at R FJ 0167.) The Kissinger patent was not found by the Reexam Panel to show an elongated feed assembly/engagement member that extended into fabric tracks and between weather stripping because the Reexam Panel concluded the prior art did not disclose such a combination. Also, Mr. Patterson did not refer the Reexam Panel to the Kissinger patent in its written Amendments dated October 18, 2005, after Mr. Patterson knew the Reexam Panel was focusing on whether the prior art taught an insert attachment member, otherwise referred to as a "pull bar" during the trial, that extended into and slid between the weather stripping in each screen track. Thus, it appears Larson's attorney, Mr. Patterson, did not find the Kissinger patent to be relevant to the issues the Reexam Panel was looking at after its rejection of the claims in the '998 patent. This could be, at least in part, because the Kissinger patent and the Genius literature disclose different retractable screen assemblies. Moreover, Larson did not introduce any evidence to contradict the opinion of AluminArt's expert witness, Dr. Jerry Hall, that the Genius literature is not cumulative to the Kissinger patent. The Court agrees with Dr. Hall's opinion on this point and finds that the Genius literature is not cumulative to the Kissinger patent.

12

In rejecting the '998 patent, the Reexam Panel found the '998 patent was unpatentable over the Johnson '222 patent, in part, because "[a] portion of the strengthening edge frame 40 of Johnson may be considered to define an elongated feed assembly that inherently extends in the tracks 112, 114 and between the weather stripping 108, 115, and 110, 115 ..." (Ex. 217D at R FH 0156.) The Genius literature refutes and is inconsistent with Larson's position before the Reexam Panel in its October 18, 2005 Amendment that the '998 patent was not anticipated by the prior art or rendered unpatentable as being obvious. Larson's position before the Reexam Panel was that, "Johnson fails to teach or suggest, in combination with the other recited claim limitations, an 'insert attachment member' having 'first and second spaced apart ends which extend into and slide between the weather stripping in each fabric track,' as required in claim 11." (Ex. 217F at R FH 0094.) Throughout Larson's written Amendment, which was submitted in response to the Reexam Panel's September 13, 2005 rejection of the '998 patent, Larson sought to convince the Reexam Panel that the '998 patent was new because it requires the ends of the insert attachment member to extend into and slide between the weather stripping in both of the fabric tracks. This requirement, however, is featured in the Genius literature and Larson did not disclose the Genius literature to the Reexam Panel.

Even if the Genius literature does not meet the Rule 56 standard for materiality, the Court finds there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow or reject the '998 patent in the reexamination proceedings. The Reexam Panel was convinced by Mr. Patterson's arguments on behalf of Larson during the October 14, 2005 meeting where Larson was seeking to convince the Reexam Panel to reverse its rejection of claims 1-22 of the '998 patent. (Ex. 217E.) The Reexam Panel summarized the agreement that was reached between Mr. Patterson and the Reexam Panel during the October 14, 2005 meeting:

> Patent Owner successfully argued that [the Johnson '222 patent] does not disclose an elongated feed assembly which slides in the fabric tracks between facing weather stripping. The rejection of claim 14 over Johnson, should therefore apparently be withdrawn. Similar language in claims 11 and 21, upon strengthening of the claim limitation, would also apparently not be anticipated by Johnson.

13

(Ex. 217E.) From the meeting with the Reexam Panel, Mr. Patterson knew of the examiners' focus on the "elongated feed assembly which slides in the fabric tracks between facing weather stripping" and he focused on that point in arguing the '998 patent was not anticipated by the Johnson '222 patent and was not obvious. (Ex. 217E and 217F.) Based upon the Reexam Panel's focus on this feature, the Court finds there is no doubt a reasonable examiner would consider the Genius literature important in deciding whether to reject the '998 patent in the reexamination proceedings.

### 3. Withheld Preferred Engineering Retractable Screen Literature

The retractable screen system described in the Preferred Engineering commercial literature (Ex. 227) is incorporated into the AluminArt door that Larson claims infringes the '998 patent. Dr. Hall testified this commercial literature is material to the reexamination of the '998 patent as it shows a profile with grooves to accept the glide, which glides are attached to the end of a pull bar with a screen attached, and it shows that the screen is as wide or wider than the pull bar such that the pull bar would be sliding in the channel that is to accept the glide. Thus, Dr. Hall concluded both the pull bar and the screen would be sliding in the channel as shown in Preferred Engineering literature. Dr. Hall concluded that this commercial literature does not disclose the use of weather stripping, so it may not be as material to the Reexam Panel as the DE '478 patent, but the Court agrees with Dr. Hall's opinion that the Preferred Engineering literature would have been material to the Reexam Panel because it does show a pull bar in channels and shows that the screen would be sliding in the channels. It is also a commercial application that would have been important to the Reexam Panel.

Although the Preferred Engineering product may not have shown it attached to a glass insert, Mr. Raponi testified that only a slight modification was necessary to incorporate the Preferred retractable screen system into a storm door and attach it to a glass insert. The Court finds it would have been obvious to attach the retractable screen system to a glass insert. AluminArt argues the Preferred literature at page 9 showing the retractable screen system being a "Generic Double Hung Tilt Slider" demonstrates it being attached to a storm window. The Court does not find it necessary

14

to determine whether page 9 shows the retractable screen system attached to a glass insert, because the Court finds this literature material for the other two aspects testified to by Dr. Hall, which are that it shows a pull bar in channels and that the screen would be sliding in the channels.

The Preferred Engineering product was on the market in 1996 and Larson was aware of the Preferred literature as early as October 2004, because one of Larson's attorneys used it in a deposition in this case before the stay was issued in October 2004. Thus, Larson should have disclosed this commercial literature to the Reexam Panel during the reexamination proceedings that occurred between 2004 and 2006. The Court finds AluminArt has established by clear and convincing evidence that the Preferred Engineering commercial literature was not cumulative and further finds that a reasonable examiner would consider the Preferred Engineering commercial literature important in deciding whether to reject the '998 patent in the reexamination proceedings.

### 4. Withheld German Patent 19639478 (the DE '478 patent)

Larson argues the Kissinger patent, which was cited as prior art to the Reexam Panel, renders the DE '478 patent cumulative to the prior art cited to the Reexam Panel. Dr. Hall testified, however, that the DE '478 patent was more material than the Kissinger patent. The basis of this opinion was that the DE '478 patent shows the retention capability of the weather stripping in the screen tracks because it shows the orientation of the weather stripping that would engage the screen if an outside force tried to pull the screen out of the screen tracks and it also shows the sealing feature, which would prevent insects and dust from getting in the tracks of the window or door. The DE '478 patent figures clearly show that the screen fabric edge is retained in the track by the weather stripping. The Kissinger patent does not include such detailed, specific disclosure of screen fabric retention by weather stripping in the screen channel. Larson did not introduce any evidence to contradict Dr. Hall's opinion that the DE '478 patent was not cumulative to the Kissinger patent. The Court agrees with Dr. Hall's conclusion that the DE '478 patent is not cumulative of the Kissinger patent.

15

The DE '478 patent clearly shows all three elements of the combination the Reexam Panel found missing in the prior art. That combination is of the elongated engagement member, otherwise referred to as the "pull bar" at the trial in this action, extending into the screen tracks and between weather stripping. Trial Exhibit 259 includes excerpts of the Johnson '222 patent, the Kemp '755 patent and the DE '478 patent, as well as the Reexam Panel's reasons for confirming the patentability of the '998 patent. This exhibit shows the importance of the DE '478 patent to the Reexam Panel's decision. The Court also notes that Examiner Johnson cited the DE '478 patent, rather than the Kissinger patent, in the '039 Continuation proceedings as being prior art that "clearly teaches a track and screen end member that rides in the track." (Ex. 218H at 039 FH 0102.) Figures 2, 3 and 4 of the DE '478 patent refute Larson's position before the Reexam Panel that the prior art did not disclose "an 'insert attachment member' having 'first and second spaced apart ends which extend into and slide between the weather stripping in each fabric track,' as required in claim 11." (Ex. 217F at R FH 0094.) Thus, the materiality standard under Rule 56 is met with regard to the DE '478 patent. Moreover, the Court finds there is no doubt a reasonable examiner would consider the DE '478 patent important in deciding whether to reject the '998 patent in the reexamination proceedings.

### 5. Withheld '039 Continuation Office Actions

As explained above, Examiner Johnson rejected all of Larson's claims in the '039 Continuation proceedings. The Office Actions issued by Examiner Johnson on the following dates were not disclosed to the Reexam Panel: Office Action dated September 21, 2005 (Ex. 218F, rejecting claims 96-106); and Office Action dated June 23, 2006 (Ex. 218H, rejecting claims 107-117). AluminArt contends a reasonable Examiner on the Reexam Panel would have considered it important to know another Examiner was rejecting substantially similar claims in a co-pending patent application. For the reasons set forth below, the Court finds the evidence establishes substantial similarity of rejected claims by Examiner Johnson in the '039 Continuation to claims 14-22 of the '998 patent before the Reexam Panel.

Regarding the materiality of failure to disclose rejection of a substantially similar claim in a co-pending patent application, the Federal Circuit held:

> [A] contrary decision of another examiner reviewing a substantially similar claim meets the *Akron Polymer* "reasonable examiner" threshold materiality test of "*any* information that a reasonable examiner would substantially likely consider important in deciding whether to allow an application to issue as a patent." 148 F.3d at 1383, 47 USPQ2d at 1534 (emphasis in original). Patent disclosures are often very complicated, and different examiners with different technical backgrounds and levels of understanding may often differ when interpreting such documents. Although examiners are not bound to follow other examiners' interpretations, knowledge of a potentially different interpretation is clearly information that an examiner could consider important when examining an application.

*Dayco Prod., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed.Cir. 2003). The Federal Circuit also found that, "[w]hen prosecuting claims before the Patent Office, a patent applicant is, at least implicitly, asserting that those claims are patentable. A prior rejection of a substantially similar claim refutes, or is inconsistent with the position that those claims are patentable[,]" thus such a rejection "meets the materiality standard under the amended Rule 56." *Id.*

Trial Exhibit 267 (a copy of which is attached) shows the similarity of claim 111 rejected in the June 23, 2006 Office Action to claim 14 considered by the Reexam Panel. In the June 23, 2006 Office Action, Examiner Johnson compared claims 107, 109-111,113-115 and 117 from the '039 continuation to claims 14, 15, and 17 of the '998 patent. (Ex. 218H at 039 FH 0102.) Examiner Johnson concluded that, "[a]lthough the conflicting claims are not identical, they are not patentably distinct from each other because the difference between the claims are considered to be obvious." (*Id.*) The Court finds these claims are substantially similar and that Examiner Johnson's Office Action dated June 23, 2006 rejecting claims 107-117 in the '039 Continuation proceedings meets both the reasonable examiner materiality standard and the materiality standard under the present version of Rule 56.

As to the September 21, 2005 Office Action, Trial Exhibit 268 (a copy of which is attached) demonstrates the similarity between claim 96 rejected in the '039 Continuation and claim 14 in the '998 patent. This Office Action was issued approximately one week after the Reexam Panel initially

rejected the claims in the '998 patent and approximately three and one-half weeks before Mr. Patterson's interview with the Reexam Panel where he sought to convince the Reexam Panel that the '998 patent was not anticipated by the Johnson '222 patent and was not obvious. (Ex. 217D.) The Court finds the claims rejected by Examiner Johnson in the Office Action dated September 21, 2005 in the '039 Continuation are substantially similar to the claims pending before the Reexam Panel. Given the substantial similarity in the claims before the Reexam Panel, the Court holds Examiner Johnson's Office Action dated September 21, 2005 meets both the reasonable examiner materiality standard and the materiality standard under the present version of Rule 56.

Although Larson did not notify the Reexam Panel of Examiner Johnson's rejection of several claims found to not be patentably distinct from the claims before the Reexam Panel, Larson *did* notify Examiner Johnson of the Notice of Intent to Issue an Ex Parte Reexamination Certificate filed by the Reexam Panel on January 26, 2006. (Ex. 218 at 039 FH 0124-125). Larson presumably submitted the Reexam Panel's favorable decision on the '998 patent in an attempt to convince Examiner Johnson he was in error in rejecting Larson's claims in the '039 Continuation. Larson offered no explanation, however, for why the allowance of claims by the Reexam Panel would be material to Examiner Johnson but the rejection of the claims in the '039 Continuation would not be material to the Reexam Panel.

An argument advanced by Larson is that it did not have an obligation to provide notice to the Reexam Panel of the September 21, 2005 and June 23, 2006 Office Actions because the Reexam Panel was aware of the '039 Continuation proceedings in light of a September 9, 2004 Office Action that was disclosed to the Reexam Panel. That Larson informed the Reexam Panel of Examiner Johnson's September 9, 2004 Office Action in the '039 Continuation does not, however, excuse Larson's failure to disclose the later-issued Office Actions. The September 9, 2004 rejection of claims 40-62 was based upon Examiner Johnson's interpretation of the Johnson '222 patent and the Kavchar patent. (Ex. 218 at 039 FH 0300-306.) Examiner Johnson rejected claims 40, 41, 43, 45-48, 50-55, 59 and 60 as "being clearly anticipated by Johnson." (*Id.* at 0303.) He also rejected claims 40, 49 and 59 under the judicially created doctrine of obviousness-type double patenting as

18

being unpatenable over claim 14 of the '998 patent. (*Id.* at 305.) Importantly, Examiner Johnson did not cite in the September 9, 2004 Office Action the other prior art he cited in the two later-issued Office Actions, which prior art the Court held above to meet the materiality standard.

## B.    Intent

"The intent element of inequitable conduct requires that 'the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.'" *Cargill*, 476 F.3d at 1364 (quoting *Impax Labs., Inc. v. Aventis Pharm. Inc.*, 468 F.3d 1366, 1374-75 (Fed. Cir. 2006)). "Intent rarely can be, and need not be, proven by direct evidence." *Id.* Rather, "'intent may be inferred where a patent applicant knew, or should have known, that withheld information would be material to the [Patent Office's] consideration of the patent application.'" *Id.* at 1366 (quoting *Critikon*, 120 F.3d at 1256). "'Close cases should be resolved by disclosure, not unilaterally by the applicant.'" *Id.* at 1367 (quoting *LaBounty Mfg., Inc. v. U.S. Int'l Trade Comm'n*, 958 F.2d 1066, 1076 (Fed. Cir. 1992)).

The Court agrees with Larson's argument that its desire to obtain a patent to exclude a known competitor's product from the market is not evidence of bad faith. Likewise, Larson's efforts to enforce its patent are not evidence of bad faith.

During the trial, the Court inquired whether an adverse inference should be drawn from Mr. Patterson's failure to testify at the trial. The parties were given an opportunity to submit a brief on this issue and the Court agrees with Larson's position that an adverse inference cannot be drawn from Mr. Patterson's assertion of the attorney-client privilege and the attorney work-product doctrine. *See Knorr-Bremse Sys. Fuer Nutzfahrzeuge GmbH v. Dana Corp*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) (holding that, "[a]lthough the duty to respect the law is undiminished, no adverse inference shall arise from invocation of the attorney-client and/or work product privilege."). Accordingly, no such adverse inference has been applied by the Court.

19

That an adverse inference cannot be drawn from Mr. Patterson's failure to testify, however, does not equate to a finding that the decision to not disclose the information discussed above to the Reexam Panel was made in good faith. Larson did not proffer any evidence to explain the reason why the information was withheld. For the reasons set forth above, the Court does not find credible Larson's argument that the undisclosed information was cumulative to the prior art disclosed to the Reexam Panel.

Intent to deceive the Patent Office is inferred by Larson's failure to disclose Examiner Johnson's adverse September 21, 2005 and June 23, 2006 Office Actions in the '039 Continuation. Although the Reexam Panel was aware of the rejection by Examiner Johnson in the '039 Continuation, as set forth in the September 9, 2004 Office Action, which was based primarily on the Johnson '222 patent, the Reexam Panel was not informed of Examiner Johnson's later rejection of claims based on the Johnson '222 patent in combination with additional prior art. The September 21, 2005 and June 23, 2006 Office Actions by Examiner Johnson squarely addressed the issues Larson knew the Reexam Panel was examining. In those Office Actions involving substantially similar claims to the '998 patent, Examiner Johnson cited the DE '478 patent as relevant prior art, which was adverse to Larson's position before the Reexam Panel. The Court finds Larson's failure to disclose the DE '478 patent under these circumstances is evidence of bad faith. Moreover, the two Office Actions issued after initial rejection were highly material to the reexamination proceedings, for the reasons explained above, and the Court does not find the Reexam Panel's knowledge of the September 9, 2004 rejection relieved Larson of its obligation to inform the Reexam Panel of the status of co-pending proceedings and the later adverse decisions by Examiner Johnson.

The Court further infers an intent to deceive the Patent Office from Larson's failure to disclose the Genius and Preferred Engineering commercial literature to the Reexam Panel. The Genius literature was cited by Larson to Examiner Johnson in the '915 Continuation-in-Part at the same time the reexamination proceedings were ongoing, but the Genius literature was not cited to the Reexam Panel. Larson has not offered and the Court does not find a legitimate reason for failure to disclose the Genius literature to the Reexam Panel. In addition, the Preferred Engineering

20

literature was available to Larson well before the reexamination proceedings were concluded and the Court does not find a legitimate reason for failure to disclose this commercial literature to the Reexam Panel.

## C.  Balancing

If a court concludes that the elements of materiality and intent have been established by clear and convincing evidence, the court "must then 'balance the equities to determine whether the patentee has committed inequitable conduct that warrants holding the patent unenforceable.'" *Cargill*, 476 F.3d at 1364 (quoting *Monsanto Co.*, 363 F.3d at 1239). "Under the balancing test, '[t]he more material the omission or the misrepresentation, the lower the level of intent required to establish inequitable conduct, and vice versa.'" *Id.* (quoting *Critikon*, 120 F.3d at 1256).

For the reasons set forth in the "Materiality" section, the Court found the two Office Actions by Examiner Johnson, the DE '478 patent, the Genius literature, and the Preferred Engineering commercial literature would have been highly material to the Reexam Panel.  The Court does not find Larson's cumulative arguments credible and also does not find credible its conclusory argument that it did not intend to deceive the Reexam Panel.  After hearing the evidence at trial, reading the deposition designations and the items the Court took judicial notice of and considering all of the parties' submissions in this case, the Court concludes that Larson has committed inequitable conduct that warrants holding the '998 patent unenforceable.  Accordingly,

IT IS ORDERED:

1.     That Larson Manufacturing Company of South Dakota, Inc., engaged in inequitable conduct before the United States Patent and Trademark Office in the reexamination proceedings of United States Patent No. 6,616,998 conducted in 2004 to 2006, and, therefore, the '998 Patent is unenforceable.

2.     That, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et. seq.*, the Court hereby declares that Larson Manufacturing Company of South Dakota, Inc.'s United States Patent No. 6,616,998 is unenforceable.

3. That Judgment will be entered in favor of Defendants AluminArt Products Limited and Chamberdoor Industries, Inc. and against Plaintiff Larson Manufacturing Company of South Dakota on all of Plaintiff's claims in this action and on Count III of Defendants' Counterclaim to the extent that the '998 patent is unenforceable due to inequitable conduct.

4. That any motion for attorney's fees shall be filed in accordance with Local Rule 54.1(C).

5. That Defendants, as the prevailing parties in this action, shall recover their costs in this action, such costs to be taxed and inserted in the Judgment by the Clerk.

6. That AluminArt's Motion for Summary Judgment, Doc. 163, is denied as moot.

7. That Larson Manufacturing's Motion for Summary Judgment, Doc. 178, is denied as moot.

Dated this **26** day of September, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
By Jackie Meuenkiener, Deputy
(SEAL)

22

| From the Reexamination of the '998 Patent | From the Prosecution of the '039 Continuation Application |
|---|---|
| 14.   A door comprising: | 111. A door comprising: |
| first and second spaced apart jambs, the jambs connected at one end by a header and at the other end by a sill wherein each jamb carries an axially oriented insert track, and an axially oriented fabric track; | first and second spaced apart jambs, the jambs being operably connected at one end by a header and at the other end by a sill, wherein each jamb carries an insert track and a screen track; |
| elongated, facing, weather stripping in each fabric track wherein first and second portions of the weather stripping face one another; | |
| a screen track module coupled to the header, the screen module carries a retractable screen having a selected width and having a free end wherein the free end is attached to an elongated feed assembly that extends at least across the width of the screen and which carries an elongated L-shaped connector element; | a screen module operably coupled to the header, the screen module carrying a retractable screen having a selected width and having a free end, wherein the free end is operably attached to an elongated engagement member that extends at least across the width of the screen and which carries a connector element; |
| an insert carried in and movable in the insert tracks wherein the insert is positionable at a plurality of locations along the jambs and wherein the connector element slidably engages an elongated section of the insert whereby as the insert moves toward the sill the screen is extracted from the module and edges of the screen and ends of the elongated feed assembly slide in the fabric tracks between facing weather stripping portions with the screen retracting into the module as the insert moves toward the header. | an insert carried in and movable in the insert tracks, wherein the insert is positionable at a plurality of locations along the jambs, and wherein the connector element operably engages an elongated section of the insert, whereby as the insert moves toward the sill the screen is extended from the module, and edges of the screen and ends of the elongated engagement member move in the screen tracks, with the screen retracting into the module as the insert moves toward the header. |

FILED

JUL 1 8 2007

CLERK

Cv03-4244

EXHIBIT

267

| From the Reexamination of the '998 Patent | From the Prosecution of the '039 Continuation Application |
|---|---|
| 14.  A door comprising: | 96.  A door comprising: |
| first and second spaced apart jambs, the jambs connected at one end by a header and at the other end by a sill wherein each jamb carries an axially oriented insert track, and an axially oriented fabric track; | first and second spaced apart jambs, each jamb having a top end and a bottom end, said jambs operably couple at their top ends by a header, and operably coupled at their bottom ends by a sill, each of said first and second jambs including a respective interior margin, the first and second jambs, header and sill presenting a door frame movable between a door open and door close position; |
| | a first screen track operably carried along at least a portion of said first jamb interior margin and a second screen track operably carried along at least a portion of said second jamb interior margin; |
| elongated, facing, weather stripping in each fabric track wherein the first and second portions of the weather stripping face one another; | a respective screen engaging element operably generally fixedly carried by each of said first and second screen track; |
| a screen track module coupled to the header, the screen module carries a retractable screen having a selected width and having a free end wherein the free end is attached to an elongated feed assembly that extends at least across the width of the screen and which carries an elongated L-shaped connector element; | a screen roller assembly operably, rollably carried by said header, said roller assembly including a roller rotatable in a first, screen extending direction, and in an opposed, second, screen retracting direction, and a spring biasing element for urging said roller in said screen retracting direction when said spring biasing element is under tension;

a flexible screen rollably carried by said roller assembly, said screen moving along a generally vertical path of travel between said header and said sill with a generally rigid screen end portion operably coupled to said flexible screen and extending generally transverse to and into said screen tracks, said generally rigid screen end portion having a coupling portion extending substantially along the length of said generally rigid screen end portion between said screen tracks, said screen having opposed screen edge portions substantially free of any support element whereby said screen presents a minimal profile when said screen is retracted onto said roller assembly, said respective screen edge portions receivable within said screen tracks and operably engageable with respective screen engaging elements; |
| an insert carried in and movable in the insert tracks wherein the insert is positionable at a plurality of locations along the jambs and wherein the connector element slidably engages an elongated section of the insert whereby as the insert moves toward the sill the screen is extracted from the module and edges of the screen and ends of the elongated feed assembly slide in the fabric tracks between facing weather stripping portions with the screen retracting into the module as the insert moves toward the header. | a door insert operably vertically movable along a generally vertical door insert path of travel between an insert raised position and an insert lowered position, the weight of said door insert urging said insert towards said lowered position; and

a second insert coupling mechanism extending generally transverse to the screen tracks and extending between the first screen track and the second screen track for operably coupling said door insert and said screen along said coupling portions, including a spline connector to provide lengthwise operable coupling of said generally rigid screen end portions with said coupling mechanism, whereby said generally rigid screen end portions is moved away from said roller when said door insert is moved along said door insert path of travel towards said insert lowered position, the weight of said insert and said spring biasing element cooperatively, operably placing tension on said screen such that said screen edge portions are generally retained between respective screen engaging elements, with a plurality of stop positions provided for said generally rigid screen end portions along the path of travel between said insert raised position and said insert lowered position, notwithstanding said screen edge portions being substantially free of any support element. |

EXHIBIT
21003-4244
268