UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



**FILED**

SEP 14 2010

CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| LARSON MANUFACTURING <br> COMPANY OF SOUTH DAKOTA, INC., <br><br> Plaintiff, <br><br> -vs- <br><br> ALUMINART PRODUCTS LIMITED, a <br> Canadian company; and CHAMBERDOOR <br> INDUSTRIES, INC., a Delaware <br> Corporation, <br><br> Defendants. | CIV 03-4244 <br><br><br><br> MEMORANDUM OPINION <br> AND ORDER |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is Defendants' Motion for Summary Judgment. (Doc. 325.) Defendants assert that claims 14-22 of Plaintiff's U.S. Patent No. 6,618,998 ("the '998 patent") are invalid as obvious under 35 U.S.C. § 103(a). The Court held a hearing on Defendants' motion on August 23, 2010. For the following reasons, the Court will deny the motion for summary judgment.

## BACKGROUND

In this litigation, Plaintiff Larson Manufacturing Company of South Dakota ("Larson") contends Defendants Aluminart Products Limited and Chamberdoor Industries, Inc. ("Aluminart") are infringing on a patent Larson was issued on September 16, 2003, United States Patent No. 6,618,998 ("the '998 Patent"). The '998 Patent relates to an exterior multi-season door with a variable length screen. The door has a spring-loaded roll of screen attached to a moveable insert or sash, such as a glass window pane, which allows the user to easily increase or decrease the amount of ventilation. This type of door allows the user to increase ventilation by moving the glass window pane down to withdraw screen material from its retracted position and cover the area where the glass insert was moved from. To decrease ventilation, the user moves the glass window pane upwards, which will allow the screen to retract. One of the benefits of this type of door is ease of use, in that the user is not required to remove the glass insert to replace with a screen insert depending upon the

season. Thus, storage of the inserts is not required. Another benefit of this type of door is that when the user desires to have the glass window pane covering the entire opening, the user is not required to look through a screen and the glass at the same time to see through the door.

The Court held a *Markman* hearing in 2004. During that hearing, Aluminart informed the Court that it would be seeking a stay in this action due to a pending reexamination request they filed with the United States Patent and Trademark Office ("Patent Office") regarding the '998 Patent. This action was stayed on October 4, 2004, pending the outcome of the reexamination proceedings. The request was granted by the Patent Office on December 20, 2004, for an Ex Parte Reexamination, which would be conducted by three patent Examiners ("the Reexam Panel").

On September 13, 2005, the Patent Office issued an Office Action rejecting claims 1 through 22 as unpatentable over the Johnson '222 patent. The Reexam Panel found that several of the claims were anticipated by the Johnson '222 patent, *see* 35 U.S.C. § 102(b), and also rejected some of the claims as being obvious, *see* 35 U.S.C. § 103(a). In response to the September 13, 2005 Office Action, Larson's lawyer, Mr. Patterson, appeared at a Reexam Panel interview on October 14, 2005, and submitted a written Amendment on October 18, 2005, seeking to convince the Reexam Panel that the '998 patent was not anticipated by the Johnson '222 patent and was not obvious. The Ex Parte Reexamination Interview Summary states that the Johnson '222 patent was discussed at the October 14, 2005 interview and also states: "Patent Owner successfully argued that Johnson does not disclose an elongated feed assembly which slides in the fabric tracks between facing weather stripping. The rejection of claim 14 over Johnson should therefore apparently be withdrawn." (Ex. 217E.)

On January 26, 2006, the Reexam Panel issued a "Notice of Intent to Issue *Ex Parte* Reexamination Certificate," canceling claims 1-10 and allowing claims 11-22. In the stated reasons for patentability of the '998 patent claims, the Reexam Panel found the prior art:

> ...teaches engaging an elongated insert attachment member, which is carried by the end of a retractable sheet material (such as a screen), to an insert (such as a glass insert), such as disclosed for example with respect to Figure 3 of [the Johnson '222 Patent]. Additionally, the prior art teaches providing an insert attachment member that will be slidably received in fabric tracks along with the fabric, such as disclosed for example with respect to Figure 4 of Kemp (U.S. Pat. No. 2,107,755). The prior

2

art also teaches providing weather stripping, having different weather stripping elements, in a fabric track, between which the edge of a fabric extends ....

(Ex. 217J.) The Reexam Panel found that, "the prior art fails to teach or fairly disclose spaced apart ends of an insert attachment member, extending into and sliding between weather stripping in each one of two fabric tracks, wherein the weather stripping includes different weather stripping elements, as part of a combination set forth in amended claim 11, and such would not have been obvious from any appropriate combination of the prior art of record." (Ex. 217J.) The Reexam Panel further specified as a point of patentability of claims 14 and 21 that the prior art did not teach or fairly suggest, and it would not be obvious, to provide a combination including as a feature:

> ... a sliding relationship of ends of the elongated feed assembly between facing portions of weather stripping of [sic] in each of two fabric tracks, as part of a door such as claimed. (claim 14)
>
> ...
> ... the elongated engagement member extending into screen tracks and between weather stripping ... (claim 21)

(Ex. 217J.) During the reexamination proceedings, claims one through ten in the '998 Patent were cancelled by Larson; claims 11, 20 and 21 were determined to be patentable as amended; claims 12, 13 and 22, which are dependent on an amended claim, were determined to be patentable; and the patentability of claims 14 through 19 was confirmed. The Patent Office published an *Ex Parte* Reexamination Certificate for the '998 patent on September 19, 2006.

Upon completion of the reexamination proceedings, the stay was lifted in this action on October 18, 2006. The Court construed the '998 Patent in its March 20, 2007 Memorandum Opinion and Order. (Doc. 128.) A trial to the Court was held on July 17 and 18, 2007, involving Count III of Aluminart's counterclaims and their Fourth, Fifth and Sixth Affirmative Defenses in the Third Amended Answer and Counterclaims, Doc. 177, and on Count IV to the extent it involved allegations of inequitable conduct before the Patent Office. Several exhibits were introduced during the trial and both parties designated portions of depositions, which the Court read after the trial. In an opinion issued on September 26, 2007, this Court found that Larson engaged in inequitable conduct during the Reexamination of the '998 patent, and the Court ruled that the '998 patent was unenforceable based upon that conduct. *Larson Mfg. Co. of South Dakota, Inc. v. AluminArt Products Ltd.*, 513 F. Supp. 2d 1102 (D.S.D. 2007). On appeal, the Federal Circuit affirmed in part,

vacated in part, and reversed in part. *Larson Mfg. Co. v. Aluminart Prods. Ltd.*, 559 F.3d 1317 (Fed.Cir. 2009). The Federal Circuit affirmed this Court's finding that two omitted office actions were material, reversed the holding that three prior-art references (the Preferred Engineering literature, the Genius literature and the German patent DE '478) were material, and remanded with instructions for the Court to determine whether Larson withheld the two office actions with deceptive intent. On remand, balancing the diminished materiality of the omitted information and Larson's intent, the Court found that Larson's conduct was not so egregious as to warrant holding its patent unenforceable. That opinion was issued on July 29, 2010. (Doc. 367.)

The instant motion involves Aluminart's assertion that it is entitled to summary judgment based on obviousness because the '998 patent requires nothing more than the combination of known elements in the Johnson and Kissinger patents. Aluminart contends that the Reexam Panel in confirming Larson's patent claims, relied on a standard for obviousness that has since been modified by the Supreme Court's decision in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007).

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988).

4

A patent enjoys a presumption of validity pursuant to 35 U.S.C. § 282. Consequently, "a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise." *Eli Lilly & Co. v. Barr Labs.*, 251 F.3d 955, 962 (Fed.Cir. 2001); *see also Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed.Cir. 2002) (holding that a party seeking to establish particular claims as invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence). Furthermore, the Federal Circuit has explained that the Patent Office Examiner's issuance of the patent is entitled to deference:

> When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed.Cir. 2008) (quoting *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed.Cir. 1984)). AluminArt's invalidity argument relies on a combination of the Johnson and Kissinger patents. These two patents were both known to the Patent Office during the reexamination of the '998 patent that took place from 2004 to 2006. The Kissinger patent was also considered during the prosecution that led to the issuance of the original version of the '998 patent. The Johnson and Kissinger patents were both considered in the '039 and '915 continuations of the '998 patent. The Kissinger patent was never cited by the Patent Office as a grounds for any claim rejection. Unlike in *KSR* where the Patent Office did not consider the prior art reference that ultimately rendered the patent obvious, 550 U.S. at 399, the Patent Office in this case considered whether the Johnson reference in combination with other prior-art references rendered obvious the application that issued as the '998 patent. In evaluating Aluminart's motion for summary judgment on the basis of obviousness, this Court must consider the additional burden born by Aluminart of overcoming the deference owed to the Patent Office.

In order to establish invalidity on obviousness grounds, Aluminart must show that "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).

5

Obviousness under 35 U.S.C. § 103(a) is ultimately a legal question, based on underlying factual determinations. *See Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479 (Fed.Cir.1997). The factual determinations underpinning the legal conclusion of obviousness include 1) the scope and content of the prior art, 2) the level of ordinary skill in the art, 3) the differences between the claimed invention and the prior art, and 4) evidence of secondary factors, also known as objective indicia of non-obviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

*Eisai Co. Ltd. v. Dr. Reddy's Labs., Ltd.*, 533 F.3d 1353, 1356 (Fed.Cir. 2008). In ruling on a motion for summary judgment of invalidity premised on obviousness, the Court must examine whether there is a material dispute as to one of these primary factors that will make a difference in the final determination of obviousness. *See Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed.Cir. 1998); *see also KSR*, 550 U.S. at 427 (allowing for summary judgment only where "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute ..."). "In considering summary judgment on that question [obviousness] the district court can and should take into account expert testimony, which may resolve or keep open certain questions of fact." *Id.* , 550 U.S. at 427. "The scope and content of the prior art, differences between the prior art and the claimed invention, the level of ordinary skill in the art, and objective evidence of secondary considerations of patentability are fact determinations." *Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l., Inc.*, 73 F.3d 1085, 1088 (Fed.Cir.1995). Additionally, "[w]hat the prior art teaches and whether it teaches toward or away from the claimed invention also is a determination of fact." *Id.*

Larson argues that summary judgment should be denied because there are genuine issues of material fact with respect to whether one of ordinary skill in the art (here, someone with a Bachelor of Science degree in an appropriate engineering discipline or a few years of experience with mechanical devices, Doc. 326 at 8) seeking to design a storm door with a retractable screen would have combined the Johnson and Kissinger references to arrive at Larson's invention, particularly considering the Reexam Panel's findings that the prior art would teach away from any such combination. Aluminart responds that the Court should grant summary judgment in their favor because it would have been obvious to an ordinarily skilled artisan to design a door combining one known component (a retractable screen with a screen-end extending into weather stripping-lined

6

screen tracks, as shown in the Kissinger patent) with a storm door having a slightly different window and screen assembly, as shown in the Johnson patent.

A review of the record in the light most favorable to Larson reveals genuine issues of material fact regarding the scope of the prior art and its relationship to Larson's '998 patent. Aluminart, who has the burden of proof on this motion, offers the Johnson and Kissinger patents, but it offers no evidence as to whether the prior art teaches toward or away from the '998 patent. In contrast, Larson points to two reasons why the Johnson patent may teach away from a screen-end member in the screen or "fabric" tracks. The first reason is that, according to the Reexam Panel, "[i]t is doubtful that the construction of the fabric tracks 112, 114, which is shown in Figure 2, would be capable of receiving the cross-section of the edge frame 40, which is shown in Figure 3." (Trial Ex. 217J.) The second reason is that "even if the cross-section of the edge frame could be received in the fabric tracks, Johnson would not disclose receiving the edge frame in the tracks." (*Id.*) If the edge frame were in the screen tracks, it would likely prevent the "disclosed functioning of the stops 109, 111 of providing a screen-tightening action and an engagement of the screen." (*Id.*) Although Aluminart's expert, Dr. Hall, has testified that the Johnson patent would be easy to modify, Larson's expert, William Lee, has testified that it would not be possible to extend an end bar into the Johnson locking mechanism without some radical alterations to the Johnson patent. Mr. Lee opines that the Johnson patent teaches away from modifying it by adding the structure at the free end of the screen in the Kissinger patent that extends into the screen tracks. (Doc. 358-3.) He adds that Kissinger's screen track system of hollow rubber or possible air-filled rubber tube and pressure pads and brushes would not work in the context of a glass window attached to a retractable screen. (*Id.*) Larson's teaching-away evidence and evidence that its invention was outside the scope and content of the prior art references, combined with the deference owed to the Patent Office after reviewing the same prior art references that are the basis of this obviousness challenge, raise genuine issues of material fact as to whether an ordinarily skilled door designer would have combined the Kissinger patent with the Johnson patent to come up with the Larson design. *See, e.g., KSR*, 550 U.S. at 416 ("[W]hen the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious.")

*KSR* does not change this analysis. In *KSR*, the Supreme Court said courts should use a more flexible approach to determining obviousness, and it rejected a rigid application of the Federal Circuit's "teaching, suggestion, or motivation" test. *See KSR*, 550 U.S. at 407 (under this test, a patent claim is only proven obvious if "some motivation or suggestion to combine" known elements can be found). The Court determined that while the "teaching, suggestion, or motivation" test had "captured a helpful insight" into obviousness, it was incompatible with Supreme Court precedent when applied in a rigid and mandatory fashion. *Id.* at 418. The Supreme Court instructed courts to "take account of the inferences and creative steps that a person of ordinary skill in the art would employ" in analyzing the question of obviousness." *Id.* Contrary to Aluminart's assertion, however, *KSR* does not completely remove Aluminart's need to demonstrate some reason to combine the Johnson and Kissinger patents. "[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR*, 550 U.S. at 418. *KSR* explains that courts should still attempt to "identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *Id.* It is

> important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.

*KSR*, 550 U.S. at 418-19. A reason for the combination is still an important consideration, even though it need not be a rigid formula, nor "a formalistic conception":

> Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.

*Id.* at 418. In the present case, Aluminart has no evidence demonstrating any reason or motivation to combine the Johnson and Kissinger patents in the fashion claimed by Larson's '998 patent.

For all of these reasons, Aluminart has failed to carry its burden of demonstrating obviousness by clear and convincing evidence. Accordingly,

8

IT IS ORDERED that the Motion for Summary Judgment, doc. 325, is denied.

Dated this ____ day of September, 2010.

BY THE COURT:

_Lawrence L. Piersol_
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

By:_____, Deputy
    (SEAL)